IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT PIERRE,                  :        No.: 4:05-CV-1915
                                :
        Plaintiff,              :
                                :
        v.                      :        Judge Jones
                                :
CHARLES WARRICK,                :
                                :
        Defendant.              :

## MEMORANDUM

## February 20, 2007

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Two Motions are pending before this Court. First, Defendant Charles

Warrick ("Defendant" or "Warrick"), filed a Motion for Summary Judgment on

December 1, 2006. (Rec. Doc. 19). Second, Plaintiff Robert Pierre ("Plaintiff" or

"Pierre"), filed a Motion for Summary Judgment on December 8, 2006. (Rec. Doc.

26). For the reasons that follow, Defendant's Motion shall be granted and

Plaintiff's Motion shall be denied.

## PROCEDURAL BACKGROUND:

On September 22, 2005, Plaintiff filed his Complaint in the above-captioned

action. (Rec. Doc. 1). On November 30, 2006, Defendant filed his Answer. (Rec.

Doc. 16).

On December 1, 2006, Defendant filed his Motion for Summary Judgment. (Rec. Doc. 19).  On December 8, 2006, Plaintiff filed his Motion for Summary Judgment.  (Rec. Doc. 26).  Although neither party has filed a Reply Brief, the time in which to do so has long since passed.  Thus, the Motions are ripe for disposition.


**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them.  See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving

party will bear the burden of proof at trial.  See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  See Celotex, 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "As to materiality, the

substantive law will identify which facts are material."  Id. at 248.  A dispute is

considered to be genuine only if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Id.

**STATEMENT OF RELEVANT FACTS:**

Although the parties disagree about a few specific circumstances that led to

the instant action, they agree on the facts relevant to our inquiry here.  In our

disposition of the instant Motions, we will, where necessary, view the facts and all

inferences to be drawn therefrom in the light most favorable to the non-moving

party, which is Pierre given our disposition here.

This civil rights action was filed by Pierre against Warrick, a Pennsylvania

State Constable, on September 22, 2005.  (Rec. Docs. 28, ¶ 1; 37, ¶ 1).  This action

stems from events surrounding litigation that was instituted in the Court of

Common Pleas of Lackawanna County: Marianne Kochanski ("Kochanski") filed

suit against Robert Pierre, our Plaintiff, at docket number 1999-Civ-2064.  (Rec.

Docs. 28, ¶ 3; 37, ¶ 3).  That litigation ("Kochanski litigation") arose out of the

allegedly negligent construction performed by Robert Pierre and Son Construction

Company at the Kochanski home.  (Rec. Docs. 28, ¶ 4; 37, ¶ 4).

The relevant facts surrounding the Kochanski litigation are as follows.

4

On November 30, 1999, Kochanski filed Notice of Intent to Take a Default Judgment.  (Rec. Docs. 28, ¶ 7; 37, ¶ 7).  Accordingly, on December 13, 1999, a default judgment was entered in favor of Kochanski and against Pierre in the amount of $31,774.95.  (Rec. Docs. 28, ¶ 8; 37, ¶ 8).

On January 11, 2002, following Pierre's failure to comply with an Order of Court in the Kochanski litigation, the Honorable Carmen D. Minora of the Lackawanna Court of Common Pleas entered an Order directing Pierre be remanded to the Lackawanna County Prison until he produced documents requested in an outstanding subpoena duces tecum that Pierre had failed to produce.[1]  (Rec. Docs. 23, ¶ 3; 40, ¶ 3; 20, Exh. A).  On January 18, 2002, Judge Minora entered an Order directing Pierre be released from the Lackawanna County Prison, but also that Pierre produce all documents requested in the aforementioned subpoena, or alternatively, that Pierre continue to make the agreed upon monthly payment installments in full or in a timely fashion.  (Rec. Docs. 23, ¶ 4; 40, ¶ 4; 20, Exh. B).

On November 15, 2002, Pierre filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the

---

[1] We note that throughout this rendering of the relevant facts, we have omitted those facts that Pierre alleges in his Statement of Material Facts that are not, in fact, dispositive to our inquiry.  For example, Pierre avers seven (7) specific allegations as to the events that led to the issuance of this Order, which are not material to the instant action.

Middle District of Pennsylvania ("the Bankruptcy Court").  (Rec. Docs. 28, ¶ 23; 37, ¶ 23; 29, Exh. H).

Following Pierre's failure to attend a Willful Contempt Hearing in the Kochanski litigation on November 22, 2002, the Honorable Trish Corbett, also of the Lackawanna Common Pleas Court, entered an Order on same date that provided:

> [I]t is hereby **ORDERED AND DECREED** that a Capias[2] is hereby issued for the arrest of Robert Pierre . . .
> It is further **ORDERED AND DECREED** as follows:
> (A) That Robert Pierre is to be taken into immediate custody by the Lackawanna County Sheriff[,] other law enforcement agencies, or Pennsylvania Constable Chuck Warrick and;
> (B) That, immediately upon taking Robert Pierre into custody a hearing shall be held before issuing Judge.

(Rec. Docs. 23, ¶ 5; 40, ¶ 5; 20, Exh. C).

On October 28, 2003, the Bankruptcy Court issued an Order dismissing Plaintiff's bankruptcy case.  (Rec. Docs. 28, ¶ 25; 37, ¶ 25).

We now turn to those events that led to the initiation of the instant suit.

Upon notice of the Bankruptcy Court's October 28, 2003 Order dismissing

---

[2] To be clear, a "capias" is defined as "[a]ny of various types of writs that require an officer to take a named defendant into custody."  BLACK'S LAW DICTIONARY 199 (7th ed. 1999) (emphasis added).

Pierre's case, Attorney Frank A. Mazzeo, Jr. ("Attorney Mazzeo"),[3] attorney for

Kochanski in the <u>Kochanski</u> litigation, by letter dated November 5, 2003,

forwarded to Warrick copies of Judge Corbett's November 22, 2002 Order issuing

a capias for Pierre's arrest ("arrest warrant") and the Bankruptcy Court's Order

dismissing Pierre's case.  (Rec. Docs. 23, ¶¶ 6-7; 40, ¶¶ 6-7; 20, Exhs. D-1, D-2,

D-3).  In said letter, Attorney Mazzeo "opined that a pending bankruptcy had been

dismissed so that the capias of Judge Corbett could be utilized to bring Pierre into

custody."  (Rec. Docs. 23, ¶ 7; 40, ¶ 7).  Thus, Attorney Mazzeo also asked

Warrick to serve the arrest warrant on Pierre and "have him brought in."  (Rec.

Docs. 23, ¶¶ 9-10; 40, ¶¶ 9-10; 20 Exh. D-1).  Indeed, Attorney Mazzeo provided a

copy of the Order dismissing Pierre's bankruptcy case so that Warrick "could see

that he was on firm legal footing in going to pick up Mr. Pierre with the capias."

(Rec. Docs. 23, ¶ 10; 40, ¶ 10; 20, Exh. E at 5-6).

In his deposition, Attorney Mazzeo also testified that the arrest warrant was

valid as of the date that he requested Constable Warrick's services, and, indeed, the

date that Constable Warrick provided them:

> The bottom line is that that capias was still active and valid and it was not
> acted upon because at that particular point in time, November 22nd, 2002,

---

[3] Attorney Mazzeo is a graduate of the Howard University School of Law located in Washington, D.C.  (Rec. Docs. 23, ¶ 8; 40, ¶ 8).  Attorney Mazzeo has been a member in good standing of the Pennsylvania bar for more than ten (10) years.  (Rec. Docs. 23, ¶ 8; 40, ¶ 8).

was when he went ahead, the bankruptcy was still being open, was still
active.  His bankruptcy was active, so I could not pursue that, okay . . .
I found out through the Court Order that he did not file the necessary
schedules again and the bankruptcy judge dismissed the case.  When I found
out that happened, this [arrest warrant] was still active.  It was never lifted, it
was never deactivated, it was never suspended.

(Rec. Docs. 23, ¶ 11; 40, ¶ 11; 20, Exh. E at 7).[4]  Prior to his November 5, 2003

correspondence to Warrick, Attorney Mazzeo had never executed the arrest

warrant.  (Rec. Docs. 23, ¶ 12; 40, ¶ 12).

The parties dispute whether Warrick contacted Attorney Mazzeo following

receipt of Attorney Mazzeo's November 5, 2003 letter.  (Rec. Docs. 23, ¶¶ 38-40;

40, ¶¶ 38-40).  Warrick contends that he contacted Attorney Mazzeo following

receipt to ensure that Pierre's bankruptcy case had been dismissed and that it was

appropriate to execute the arrest warrant; that he specifically inquired into whether

such warrant might be stale, and that Attorney Mazzeo explained that the warrant

was good "until it was used."  (Rec. Docs. 23, ¶¶ 38-39; 20, Exh. G at 45).

Warrick further contends that as a result of this conversation, he was comfortable

---

[4] We acknowledge here that, by way of further response, Pierre accurately notes that
Attorney Mazzeo was counsel of record for Kochanksi in Pierre's bankruptcy action after
February 18, 2003.  (Rec. Doc. 40, ¶ 11).  Pierre goes on to note that, accordingly, Attorney
Mazzeo had knowledge of Pierre's filing of a Motion for Reconsideration of the Bankruptcy
Court's Order dismissing Pierre's case.  Apparently Pierre seeks to imply that, thus, somehow
Attorney Mazzeo's action on the arrest warrant was improper.  (See Rec. Doc. 28, ¶ 24).
However, we note that Pierre's Motion for Reconsideration was not filed until November 10,
2003, *after* Attorney Mazzeo's letter to Warrick and Warrick's seizure of Pierre.  (Rec. Doc. 29,
Exh. H).

utilizing the arrest warrant to take Pierre into custody.  (Rec. Doc. 23, ¶ 40).  Pierre

denies all such contentions, arguing that Warrick's credibility as to these matters is

an issue for a jury, and accordingly, for our purposes here, we will assume that said

conversation did not take place.

On Friday, November 7, 2003, sometime after 5:00 p.m., Pierre pulled into a

driveway of a private residence and Warrick pulled in behind him.  (Rec. Docs. 23,

¶ 20; 40, ¶ 20; 28, ¶ 32; 37, ¶ 32).  Both he and Warrick exited their vehicles,

Pierre identified the individual who had pulled up behind him as Warrick, and

Pierre approached Warrick to inquire as to what was going on.  (Rec. Docs. 23, ¶¶

21, 30; 40, ¶¶ 21, 30).

The parties dispute some of the details of Pierre and Warrick's conversation.

However, several aspects of that conversation are agreed upon, and we review

them here.  Initially, Warrick explained to Pierre that he was taking him to jail

because either he had a warrant from Judge Corbett and or that Judge Corbett

wanted to see him.  (Rec. Docs. 23, ¶ 22; 40, ¶ 22; 20, Exh. F at 31-32).  Warrick

also told Pierre that he was taking Pierre to jail because of a debt he owed to

Maryann Kochanski, explaining "you owe her twenty some hundred dollars in

payments, you're behind."  (Rec. Docs. 23, ¶ 23; 40, ¶ 23; 20, Exh. F at 32).

At around this time, Warrick placed handcuffs on Pierre and put him in

Warrick's car.  (Rec. Doc. 20, Exh. F at 32).  When averring as to the force used to apply the handcuffs, Warrick relies on his own deposition testimony, which indicates that because Pierre resisted Warrick's placing of the handcuffs on him by pulling Warrick toward Pierre's girlfriend, Kelly Allesch ("Allesch"), Warrick "just had to twist his cuff just a little bit and then he [Pierre] decided he wanted to come, and it wasn't in a forceful way."  (Rec. Doc. 23, ¶ 33; 20, Exh. G at 28). Pierre flatly denies this proposition, but provides no explanation or cite to the record in support thereof.  (Rec. Doc. 40, ¶ 33).  Indeed, Pierre's deposition only mentions the application and removal of handcuffs, without any specific reference to the manner in which they were applied or any injury that occurred as a result thereof.  (Rec. Doc. 20, Exh. F).  Moreover, although there are other witnesses to portions of the November 7, 2003 incident, we have no deposition testimony by any such witnesses indicating that use of the handcuffs was forceful or that Pierre appeared to suffer injury.  (Rec. Doc. 29, Exhs. I at 5, 7; J at 4; K at 4).  Notably, Pierre's Statement in Material Facts in support of his Motion for Summary Judgment contains no allegation that application thereof was forceful.

Warrick went on to tell Pierre that if Pierre came up with the "twenty some hundred dollars," which represented the amount of the arrearage, he would not take him to jail.  (Rec. Docs. 23, ¶ 24; 40, ¶ 24; 20, Exh. F at 33).  In response, Pierre

indicated that he did not have that kind of money, and then Warrick asked him if he knew anyone who did.  (Rec. Doc. 20, Exh. F at 32).  At that point, Pierre indicated that his father's house was on the way to the Lackawanna County Prison, and asked Warrick to stop there to see if his father was willing to pay the arrearage.  (Rec. Docs. 23, ¶ 24; 40, ¶ 24; 20, Exh. F at 33-34).  Warrick told Pierre that if Pierre's father paid, Pierre would not have to go to jail.  (Rec. Docs. 23, ¶ 24; 40, ¶ 24; 20, Exh. F at 33-34).

Accordingly, Warrick drove Pierre to his father's house.  (Rec. Docs. 23, ¶ 25; 40, ¶ 25).  As Warrick had not been to Pierre's father's home prior to November 7, 2003, Pierre provided Warrick directions to the home.  (Rec. Docs. 23, ¶ 35; 40, ¶ 35).  It only took a couple of minutes to travel from the location where Pierre was picked up to the home of Pierre's father and stepmother.[5]  (Rec. Docs. 23, ¶ 34; 40, ¶ 34).

When they arrived at the home of Pierre's father and stepmother, Warrick

---

[5] As it is not relevant to our determination, we only note in passing that the parties dispute Warrick's demeanor during the November 7, 2003 interaction between Pierre and him. Pierre's girlfriend, Allesch, testified that during the initial interaction between Warrick and Pierre, before they left for Pierre's father's house, Warrick had an "attitude" with Pierre and did not appear to like him.  (Rec. Doc. 28, ¶ 36).  Pierre also contends that during the ride to his father's house, Warrick appeared angry with him and explained that it was because Warrick's apparently romantic relationship with Kochanski had ended at least in part due to Warrick's referral of Kochanski to Pierre and the litigation that followed Pierre's work on her home.  (Rec. Doc. 20, Exh. F at 35).

Warrick specifically denies having an "attitude" with Pierre during their November 7, 2003 interaction.  (Rec. Doc. 37, ¶ 36).

went inside for fifteen (15) to twenty (20) minutes.  (Rec. Docs. 23, ¶ 25; 40, ¶ 25).

At some point therein, Pierre's father requested to see his son, so Warrick took

Pierre out of the car and brought him into the house while he was still handcuffed.

(Rec. Docs. 28, ¶ 38; 37, ¶ 38).  It is unclear whether Pierre was then returned to

the car or remained in the house, but based upon Pierre's testimony, it appears that

he was returned to the car.  (<u>See</u> Rec. Docs. 23, ¶ 27; 40, ¶ 27; 20, Exh. F at 38).

While Warrick was in the home of Pierre's father and stepmother, Pierre's

father indicated that he knew it was a Friday night and that no judicial officers

were available on a Friday night.  (Rec. Docs. 28, ¶ 45; 37, ¶ 45).  Accordingly,

Pierre's stepmother wrote out a check for $2,200, payable to Attorney Mazzeo, and

handed it to Warrick.  (Rec. Docs. 23, ¶¶ 14, 27, 33; 40, ¶¶ 14, 27, 33).  This

brought Pierre's arrearage current.[6]  (Rec. Docs. 23, ¶ 14; 40, ¶ 14).  Upon receipt

of the check, Warrick emerged from the home, removed Pierre's handcuffs, and

told him that he was free to go.  (Rec. Docs. 23, ¶ 27; 40, ¶ 27).

From the time that Warrick placed Pierre in Warrick's car in handcuffs until

the handcuffs were removed at Pierre's father's home and he was released from

Warrick's custody, approximately an hour or so passed.  (Rec. Docs. 23, ¶ 26; 40, ¶

---

[6] We note that Warrick's knowledge of the arrearage amount and to whom the check needed to be made payable, neither of which is contained in the letter Attorney Mazzeo sent Warrick requesting execution of the arrest warrant, tends to confirm that Warrick and Attorney Mazzeo had some sort of discussion following Warrick's receipt of Attorney Mazzeo's letter.

26).  Pierre has testified that throughout this time, neither he nor his father were ever shown a copy of the arrest warrant from Judge Corbett.  (Rec. Docs. 23, ¶ 28; 40, ¶ 28).  Allesch also testified at no point in time did she see Warrick show Pierre any paperwork documenting why Warrick was taking Pierre into custody.  (Rec. Doc. 28, ¶ 36).  However, Warrick maintains that he showed Pierre a copy of the arrest warrant.  (Rec. Doc. 24 at 25).

Warrick possessed a State Constable License at the time he took Pierre into custody.  (Rec. Docs. 23, ¶ 41; 40, ¶ 41).  During his deposition, Warrick conceded that he did not follow the letter of the arrest warrant because he did not take Pierre to the issuing Judge immediately upon taking him into custody.  (Rec. Docs. 28, ¶ 31; 37, ¶ 31).  However, the parties agree that at the time Warrick took Pierre into custody, Warrick was acting under the authority of the Court of Common Pleas of Lackawanna County.  (Rec. Docs. 23, ¶ 42; 40, ¶ 42).  Moreover, Warrick testified in his deposition that he did not intentionally take Pierre into custody after business hours on a Friday, but that because Pierre worked during the day and Warrick did not know the location of Pierre's jobs, "he's a tough guy to get during the day . . . ."  (Rec. Doc. 20, Exh. at 56, 58).

On November 10, 2003, Pierre filed a concurred Motion for Reconsideration of the Bankruptcy Court's October 28, 2003 Order dismissing his case.  (Rec.

13

Docs. 28, ¶ 27; 37, ¶ 27).  On same date, the Bankruptcy Court granted the Motion

and reinstated Pierre's bankruptcy case.  (Rec. Docs. 28, ¶ 27; 37, ¶ 27).

**DISCUSSION:**

Plaintiff has brought several claims arising out of the November 7, 2003

incident.  Plaintiff's Complaint brings two 42 U.S.C. § 1983 ("§ 1983") claims,

one for the seizure of his person and one for the seizure of money that his father

and stepmother paid, but for which he allegedly reimbursed them.  (Rec. Doc. 1 at

7-8).  He alleges that such seizures constituted violations of the Fourth and

Fourteenth Amendments.  Plaintiff Complaint also brings three claims grounded in

Pennsylvania state law: false arrest, false imprisonment, and battery.  (Rec. Doc. 1

at 9-11).

Both Plaintiff and Defendant have filed Motions for Summary Judgment

seeking entry of an Order in their favor on all claims.  (See Rec. Docs. 19, 26).

**A.      Plaintiff's § 1983 Claims**

The logical starting point of our analysis for these claims is consideration of

the text of § 1983.  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

"[I]n any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998).  As the Supreme Court reiterated in United States v. Lanier, and Lewis, 523 U.S. at 843, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Lanier, 520 U.S. 259, 272 n.7 (1997) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  Thus, because the alleged seizures of Plaintiff's person and money are covered by the Fourth Amendment, we analyze them in light of Fourth Amendment, rather than Fourteenth Amendment, jurisprudence.  See, e.g., Lewis, 523 U.S. at 843.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. CONST. amend IV.  Accordingly, the Supreme Court has held that "'seizure'

alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'"
Brower v. County of Inyo, 489 U.S. 593, 599 (1989).

Abundant authority exists on the parameters of a seizure under the Fourth
Amendment.  In Open Inns, Ltd. v. Chester County Sheriff's Dep't, 24 F. Supp. 2d
410 (E.D. 1998), a colleague from the Eastern District of Pennsylvania provides an
instructive summary of the Supreme Court's jurisprudence for determining
whether a seizure of property has occurred.  "[A] 'seizure' of property occurs when
'there is some meaningful interference with an individual's possessory interest in
that property.'"  Open Inns, Ltd., 24 F. Supp. 2d at 424 (quoting Soldal v. Cook
County, 506 U.S. 56 (1992)) (internal quotations omitted).  In contrast, a seizure of
a person occurs "when, 'taking into account all of the circumstances surrounding
the encounter, the police conduct would have communicated to a reasonable person
that he was not at liberty to ignore the police presence and go about his business.'"
Kaupp v. Texas, 538 U.S. 626, 629 (2003) (quoting Florida v. Bostic, 501 U.S.
429, 437 (1991)) (internal quotations and citations omitted).

However, upon a finding of seizure, courts must proceed to consider the
reasonableness thereof.  Although "'the test of reasonableness under the Fourth
Amendment is not capable of precise definition or mechanical application,'" id.
(quoting Bell v. Wolfish, 441 U.S. 520 (1979)), it is an objective inquiry.  See also

16

Graham, 490 U.S. at 397 (noting that in the Fourth Amendment context, the "reasonableness" inquiry is objective).

We begin by applying this jurisprudence to Pierre's claim that Warrick's taking him into custody on November 7, 2003 constituted a seizure in violation of the Fourth Amendment. As Warrick concedes "that Pierre was subjected to a seizure . . . ," we need only determine whether that seizure was made pursuant to a valid warrant and with on probable cause. We hold that it was.

The arrest warrant from Judge Corbett, which Warrick executed, is a part of the record before us. (See Rec. Doc. 20, Exh. C). As indicated above, the Order clearly issued a capias for the arrest of Pierre and ordered that Pierre be taken into custody by any number of authorities, including Constable Warrick. No language therein limits the times of day or days of the week in which it may be executed or provides a date upon which it would expire. Further, we have no evidence before us indicating that the arrest warrant was suspended or lifted. Accordingly, we conclude that the Warrick's seizure of Pierre was executed pursuant to a valid arrest warrant. Additionally, because "[p]olice officers acting pursuant to a facially valid warrant generally are deemed to have probable cause to arrest," Garcia v. County of Bucks, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001), we conclude that Warrick's seizure of Pierre was undertaken with probable cause.

17

Pierre's arguments to the contrary are unavailing.  Specifically, Pierre relies on the absence of language in the November 22, 2002 arrest warrant directing that Pierre be taken to the Lackawanna County Prison, which does, indeed, differ from the language of the January 11, 2002 Order against him.  Pierre also highlights Warrick's apparent concession during his deposition that his actions on November 7, 2003 did not comply with the letter of the November 22, 2002 Order.  (Rec. Doc. 39 at 5).  Finally, Pierre argues that "a major factual dispute exists between the parties as to whether the capias issued here was in fact 'stale' . . . ," although he concedes that prior to November 7, 2003, the arrest warrant had never been executed (doc. 40, ¶ 12) and that the only cases on the issue of the arrest warrant's staleness to which he directs us arose in the criminal context.  (Rec. Doc. 39 at 4).  We are unpersuaded by these arguments for several reasons.

First, this Court is intimately familiar with the Orders that may issue when a party fails to attend a scheduled hearing.  Experience confirms that, indeed, sometimes such parties are arrested during hours in which the courthouse is not open, and that this results in the parties being placed in prison until a judicial officer is available to hold a hearing on the issue.  Although this outcome may, indeed, be unpalatable for those who are so detained, we note that those wishing to avoid this fate may easily do so by appearing before those courts that expect them.

To find otherwise would eviscerate the ability and authority of proper authorities to seize individuals based on valid warrants, creating a sort of "after hours" safe harbor that surely does not exist.

Second, Pierre's reliance upon Warrick's concession is misplaced. Warrick's acknowledgment that his actions were not in keeping with the letter of the November 22, 2002 Order should not be taken out of context.  Other testimony in Warrick's deposition confirms that his experience in executing such Orders is in accord with our own.  (Rec. Doc. 20, Exh. G at 57).  Indeed, in essence, Warrick testified that judicial officers are not available twenty-four hours a day, and as such, sometimes parties who have been taken into custody for failing to attend a scheduled court proceeding, pursuant to an Order that directs them to be taken before a judicial officer, are taken to prison instead, until such officer is available.

Third, we do not find that the arrest warrant was stale.  As a threshold matter, we note that, contrary to Pierre's assertion, whether the arrest warrant was stale is not a factual dispute, but rather an issue of law.  The parties agree upon the date of its issuance, as well as the date of its execution.  Thus, we are left to determine whether, as a matter of law, the arrest warrant was stale.

As Pierre accurately indicated, courts have consistently held that hearings occurring after a defendant had been imprisoned on a warrant are sufficient to

determine whether the warrant was stale.  See, e.g., Moody v. Daggett, 429 U.S. 78, 87 (1976).  Here, no such hearing took place because, due to Pierre's request, Pierre's father and stepmother voluntarily paid the arrearage and Pierre was released.  In so requesting, Pierre likely waived any right to assert that the warrant under which he had been taken into custody was stale.  Even if such argument is not waived, we conclude that where, as here, an arrest warrant contains no expiration date, the party to whom it relates has instituted a bankruptcy action mandating a stay upon collection of debts thus impeding execution of the warrant, and the arrest warrant is executed within two (2) weeks of the lifting of that stay, it is not stale.  See generally United States v. Watson, 423 U.S. 411, 432 n.5 (1976) (Powell, J., concurring) (noting that "[t]he probable cause to support issuance of an arrest warrant normally would not grow stale as easily as that which supports a warrant to search a particular place for particular objects.").

We next apply Fourth Amendment jurisprudence to Pierre's claim that Warrick's taking of a check from Pierre's father and stepmother, for which Pierre allegedly reimbursed them (doc. 1, ¶ 26), constituted a seizure in violation of the Fourth Amendment.  We initially note that although Warrick did not raise the

issue, even if we accept Pierre's bare allegation[7] that he reimbursed his father and

stepmother for the $2,200 check that they provided Warrick, such evidence falls

short of that which would grant Pierre standing to claim a constitutional violation

arising therefrom.  See, e.g., Allen v. Wright, 468 U.S. 737, 751 (1984) (noting

that "[a] plaintiff must allege personal injury fairly traceable to the defendant's

allegedly unlawful conduct and likely to be redressed by the requested relief.")

(citation omitted).

However, in the interest of caution, we will also analyze on the merits

Pierre's claim that Warrick's taking of the check that Pierre's father and

stepmother tendered constituted a seizure.  Despite the absence of case law on

point, as Warrick has noted (doc. 24 at 21), the facts of this action simply do not

support a finding that the tendering of such a check and alleged reimbursement by

Pierre constitutes "some meaningful interference" with Pierre's interest in the

$2,200 he allegedly repaid his father and stepmother.  Open Inns, Ltd., 24 F. Supp.

2d at 424.  Although we understand that Pierre maintains that Warrick's words

caused him to make such an offer, Pierre's own Complaint alleges that he asked to

be taken to the house of his father and stepmother.  (Rec. Doc. 1, ¶ 20).  The reason

---

[7] Pierre has cited no evidence in support of this allegation.  Our review of Pierre's deposition (doc. 20, Exh. F), as well as that of his father and stepmother (doc. 29, Exhs. J, K), revealed none.

for the stop was clear: to determine whether his father and stepmother were willing to tender a check for the amount Pierre owed to eliminate the need for the contempt hearing ordered in the arrest warrant.  Thus, Pierre voluntarily went to his father and stepmother's house, they voluntarily tendered the check necessary to keep Pierre out of prison, and then, apparently, Pierre voluntarily repaid them.  Such circumstances simply do not warrant a finding that any such repayment by Pierre constituted a seizure of his property in violation of the Fourth Amendment.

Finally, we consider Warrick's apparently alternative argument that he is entitled to qualified immunity on Pierre's § 1983 claims.  (See Rec. Doc. 24 at 22-26).  As Warrick notes, and Pierre concedes (doc. 39 at 6), when determining whether a governmental official is entitled to qualified immunity, courts are to consider, in the light most favorable to the party asserting injury, two inquiries: (1) "do the facts alleged show the officer's conduct violated a constitutional right?" and (2) "whether the right was clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Warrick essentially argues that even if this Court holds that Pierre's constitutional rights were violated, he is entitled to qualified immunity from suit on such claims because the rights were not clearly established.  (Rec. Doc. 24 at 22-26).  The Court of Appeals for the Third Circuit has held that where a Constable argues that he is entitled to qualified immunity because he executed a facially valid

warrant, whether the rights at issue were clearly established is answered by considering "whether 'a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession.'"  Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000) (citation omitted).

Thus, in the interest of thoroughness, we hold that even if Pierre's constitutional rights were somehow violated by Warrick, a reasonable officer in Warrick's position would have believed his execution of the arrest warrant was lawful, Berg, 219 F.3d at 272, and thus, Warrick is entitled to qualified immunity. We so hold for several reasons.

First, by the time Warrick took Pierre into custody, Warrick had received a letter from Attorney Mazzeo, containing copies of the November 22, 2002 arrest warrant and the Bankruptcy Court's Order dismissing Pierre's bankruptcy case, and directing him to serve and take into custody Pierre.  (Rec. Doc. 20, Exhs. D-1, D-2, D-3).  Accordingly, even viewing the facts in the light most favorable to Pierre, i.e. assuming that Warrick's alleged conversation with Attorney Mazzeo never took place, Warrick was still in receipt of authority from an attorney requesting that he act on a warrant.  Warrick had no authority that he could have reasonably relied upon to disregard the arrest warrant.  See Duffy v. County of

<u>Bucks</u>, 7 F. Supp. 2d 569, 577 (E. D. Pa. 1998).  Finally, although the parties dispute whether Warrick showed Pierre, or anyone for that matter, the arrest warrant is immaterial to our determination as to any clear violation of Pierre's rights here because arresting agents are not required to have a warrant in their possession provided it is still outstanding.  <u>See</u>, <u>e.g.</u>, <u>United States v. Leftwich</u>, 461 F.2d 586, 592 (3d Cir. 1972).

## B.    Plaintiff's State Law Claims

We initially note that, as they did with regard to the jurisprudence on qualified immunity, the parties largely agree with respect to the jurisprudence governing our disposition of Pierre's state law claims.  Thus, we outline that jurisprudence only briefly below.

### 1.    Plaintiff's False Arrest and False Imprisonment Claims

Under Pennsylvania law, false arrest and false imprisonment are "nearly identical claims," and "are generally analyzed together."  <u>Maiale v. Youse</u>, No. 03-5450, 2004 U.S. Dist. LEXIS 17442, at *40 (E.D. Pa. Aug. 27, 2004).  <u>See also</u> <u>Olender v. Township of Ben Salem</u>, 32 F. Supp. 2d 775, 781 (E.D. Pa. 1999) (citing <u>Gagliardi v. Lynn</u>, 285 A.2d 109, 110 (Pa. 1971)).  Pierre concedes (doc. 27 at 6) that probable cause for an arrest will defeat actions for both false arrest and false imprisonment.  <u>See</u>, <u>e.g.</u>, <u>Gilbert v. Feld</u>, 842 F. Supp. 803, 821 (E.D. Pa.

1993).

As we have held that the November 22, 2002 Order constituted a valid arrest warrant, Warrick had probable cause to arrest Pierre.  <u>Garcia</u>, 155 F. Supp. 2d at 265.  Thus, Pierre's false imprisonment and false arrest claims cannot be sustained.

### 2.      Plaintiff's Battery Claims

Pierre accurately summarizes Pennsylvania jurisprudence on battery. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  <u>Rink v. City of Pittsburgh</u>, 641 A.2d 289, 293 (Pa. 1994).  However, as Pierre would appear to concede (doc. 27 at 7), a law enforcement officer "may use reasonable force to prevent interference with the exercise of his authority or the circumstances to effectuate the arrest."  <u>Id.</u>  Thus, a law enforcement officer is only liable for battery if he uses force that was unnecessary or excessive.  <u>Id.</u>

In the Statement of Material Facts in Support of his Motion for Summary Judgment, Warrick alleges, relying on his own deposition testimony that because Pierre resisted Warrick's placing of the handcuffs on him by pulling Warrick toward Pierre's girlfriend, Warrick "just had to twist his cuff just a little bit and

then he [Pierre] decided he wanted to come, and it wasn't in a forceful way."  (Rec. Docs. 23, ¶ 33; 20, Exh. G at 28).  Pierre flatly denies this proposition, but provides no explanation or cite to the record in support thereof.  (Rec. Doc. 40, ¶ 33).

Pierre fails to provide support for his denial because none exists in this record.  First, Pierre's deposition only mentions the application and removal of handcuffs, without any specific reference to the manner in which they were applied.  (Rec. Doc. 20, Exh. F).  Second, although the parties reference other witnesses to the November 7, 2003 incident, we have no deposition testimony by any such witnesses indicating that use of the handcuffs was forceful.  (Rec. Doc. 29, Exhs. I at 5, 7; J at 4; K at 4).  Third, Pierre's Statement in Material Facts in support of his Motion for Summary Judgment contains no allegation that application thereof was forceful.[8]

As Warrick has moved for summary judgment on Pierre's battery claim and as demonstrated by deposition testimony (doc. 20, Exh. G at 28) that the force exerted was neither unnecessary or excessive, Rink, 641 A.2d at 293, and further because Pierre has failed to meet his resulting burden of showing a genuine issue

---

[8] Thus, we fail to see how Pierre can assert that he is entitled to summary judgment on all of his claims.  (Rec. Doc. 27 at 8).

of material fact as to this matter, we hold that, indeed, Pierre's battery claims also fails as a matter of law.

An appropriate Order shall issue.